Lance L. SAFRAN, Robert G. Schlachter, Anton J. Kotar, Carl Potenziani, Nicholas Hovan, Jr., Anthony G. Marinov, Paul A. Tague, and Alfred A. Matteucci, Plaintiffs,

v.

UNITED STEELWORKERS OF AMERICA AFL–CIO, and United States Steel Corporation and its successor USX Corporation, Defendants.

Civ. A. No. 87–2191.

United States District Court, W.D. Pennsylvania.

July 9, 1990.

See also 678 F.Supp. 1178.

Joseph A. Yablonski and John F. Colwell, Washington, D.C., for plaintiffs.

Richard S. Brean, S.G. Clark, and Dawne Hickton, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

The matter before the Court for disposition is the Motion of the defendant, United States Steel Corporation (USS) and its successor, defendant, USX Corporation (USX), for entry of a blanket protective Order relating to documents concerning man-hours per ton of steel produced, production costs and related financial data, and manpower reduction programs. Hereafter, USS and USX shall be referred to jointly as USS/USX.

USS/USX assert two bases for their Motion: (i) that such documents should not be disseminated to nonparties because they would be prejudiced by its disclosure to their competitors, and (ii) because they have an on-going collective bargaining relationship with the defendant, United Steel-

**34**

workers of America, AFL–CIO (USW), USW should be barred from using the documents or information for any purpose other than the instant litigation.

USS/USX did not file any affidavits in support of the Motion for a Protective Order. Nevertheless, the plaintiffs do not oppose the Motion. However, USW asserts that while the first basis is a proper basis for a Protective Order, the second basis is not, and accordingly, USW will agree to an Order prohibiting the disclosure of the documents to nonparties, but asserts that its duty of fair representation under federal law requires it to use the documents for precisely the purposes which USS and USX seek to prohibit.

The underlying action arises out of alleged breaches of subcontracting provisions of the collective bargaining agreement between USS/USX and USW, and that as a result of such breaches, the plaintiff-employees were deprived of hours of work and/or laid off.

The USW filed a grievance, seeking a recall of laid off workers, as well as lost back pay and benefits, most notably, eligibility for early retirement.

While the agreements were before a Board of Arbitrators, the then current bargaining agreement of 1983 expired and there was a work stoppage.

Once a new agreement was reached in 1987, the grievance continued in place under the 1987 agreement. It is alleged that the USW then withdrew the grievance without the consent or approval of the plaintiffs' Local Union.

The plaintiffs seek to have the withdrawn grievance reinstated to arbitration for a decision on the record already developed, or in the alternative, to recover damages from USS/USX for breach of contract, from USW for breach of its duty of fair representation and from USS/USX and USW for violation of ERISA.

USW contends that USS/USX has failed to make the required showings of confidentiality and harm under Rule 26(c) and that even if USS/USW had done so, the Motion should nevertheless be denied because the requested Protective Order contravenes the federal labor policy by interfering with the performance of USW's duty of fair representation.

Moreover, USW argues that by reason of its duties of fair representation which it owes every member of the bargaining unit by virtue of the grant of exclusive representation rights by § 9(a) of the NLRA, 29 U.S.C. § 159(a), it is distinguished from the ordinary litigant seeking to use the fruits of discovery to vindicate its private rights in another forum.

It further argues that for that reason, it is not free as is the usual private party to consent not to use the information obtained in discovery for other lawful purposes and in conclusion, should be permitted to use any information which its obtains in this lawsuit with regard to the lawful purposes to which the duty of fair representation attaches, to-wit, collective bargaining and contract administration.

■ Rule 26(c) places the burden of persuasion on the parties seeking the Protective Order. Such party must show good cause by demonstrating a particular need for protection for allegations of harm; unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108 (3d Cir.1986).

USS/USX contend that under *Detroit Edison v. NLRB*, 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979), and *New Jersey Bell Telephone v. NLRB*, 720 F.2d 789 (3d Cir.1983), the "duty of fair representation" does not automatically preempt an employer's right to keep certain information confidential.

Both of those cases involve a request by a Union for confidential information from the company regarding personal information of employees without their consent.

The issues relating to employee confidentiality and the responsibilities of the Union there are much different than those in the present action.

■ The general rule is that the employer must provide the bargaining representative with relevant information neces-

sary for the proper performance of his duties. This rule, however, is not absolute; *Detroit Edison, supra,* and the Court must determine if the Union's bargaining function would be impaired by the protection sought.

■ USW's concern here is that it will be in violation of its implied duty of fair representation to its members if it fails to use the information discovered to the advantage of the Union's membership. It appears to the Court that the concerns of USW are without justification.

Under *Medlin v. Boeing Vertol Company,* 620 F.2d 957 (3d Cir.1980), the duty of fair representation is the duty owed by the Union to the employees to represent their interests fairly and in good faith. A breach of the statutory duty occurs *only* when a Union's conduct toward the membership is arbitrary, discriminatory or in bad faith. It is necessary that the Union act with a bad faith motive before a claim of breach of the duty can be stated.

Should the membership of a Union claim that the Union's efforts on their behalf were merely inadequate, the allegations would not be sufficient to state a claim for breach of the duty of fair representation. *Starks v. Perloff Brothers, Inc.,* 586 F.Supp. 456 (E.D.Pa.1984). If the USW is acting within the purview of a protective Order of the Court, the membership would be unable to establish a "bad faith motive" on the part of USW.

While the Order will not insulate the USW from attack by the membership, it certainly will give it a sound foundation from which to base its defense.

■ At argument, counsel for the USW conceded that it would not be entitled to some of the information sought to be protected by USS/USX as part of the collective bargaining process, and as stated previously, further concedes that the protection order is appropriate as to nonparties. Therefore, by reason of the complete concession of the plaintiffs and the limited concession of USW in that regard, the movants need not establish a generalized threshold showing of good cause to support its motion for the protective Order. *Cf.*

*Parkway Gallery Furniture v. Kittinger/Pa. House,* 121 F.R.D. 264 (M.D.N.C. 1988), where the Court held that because the parties agreed to a stipulated protective order, there was no requirement that the movant make a generalized threshold showing of good cause to support the protective order as required by Rule 26(c).

Since the concessions of the plaintiffs and the USW establish a threshold showing of good cause, and because the USW would not be entitled to some of the information under the NLRA, an Order will be entered limiting the use of such information to the present litigation.

## ORDER OF COURT

AND NOW, to-wit, this 9th day of July, 1990, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. All information in USS/USX documents pertaining to manhours per ton of steel produced, manpower reduction programs, and all financial data in USS/USX documents such as Executive Summaries and Cost Center Statements, and including any documents pertaining to manhours per ton of steel produced, manpower reduction programs, and financial data in the Executive Summaries and cost Center Statements, which are stamped confidential by defendant USS/USX, shall not be disclosed to any person other than the parties to this litigation; the attorneys involved in this litigation as well as their partners, associates, secretaries, paralegals, assistants and employees to the extent reasonably necessary to render professional services in the litigation; to expert witnesses and consultants retained by the parties to this litigation and their employees and assistants; to persons with prior knowledge of the documents or confidential information contained therein and their agents; to witnesses in deposition; to persons who may be witnesses at trial; to witnesses at trial; to court officials involved in this litigation including court reporters, persons operating video equipment at depositions and any special master appointed by the Court.

2. Even though this blanket protective Order permits all documents to be designated as confidential, USS/USX must only invoke the designation in good faith.

3. After receiving the documents, USW has the right to contest those documents which it believes not to be confidential and at this stage, USS/USX seeking the protection, bear the burden of proof to justify retaining the confidentiality designation.

4. The parties, their attorneys as well as their partners, associates, secretaries, paralegal, assistants and employees; and the expert witnesses and consultants retained by the parties as well as their employees and assistants, shall not use documents stamped confidential and the confidential information contained therein except of the purposes of this litigation.

5. One hundred twenty days after the end of this litigation including the exhaustion of any appeals or time for appeal, the parties shall return all stamped confidential documents to the party or other person that designated that document as confidential.