Forrest GILLARD, individual, by and through his next friend, Jennifer Gillard, Plaintiff,

v.

BOULDER VALLEY SCHOOL DISTRICT RE–2, et al., Defendants.

No. CIV.A. 00–B–21.

United States District Court, D. Colorado.

Sept. 5, 2000.

W. Lee Hill, Julia Yoo, Boulder, CO, for Plaintiff.

William J. Kowalski, Boulder, CO, for Defendant.

## ORDER

BOLAND, United States Magistrate Judge.

This matter is before me on the defendants' **Motion for Expedited Entry of Protective Order** (the "Motion for Protective Order"), filed June 28, 2000. The plaintiff opposes the Motion for Protective Order. Because the defendants have demonstrated good cause for the entry of a protective order and because entry of a protective order will facilitate orderly and efficient discovery without any adverse effect on the rights of any party, person, or entity, the Motion for Protective Order is GRANTED.

## I.

This case is brought on behalf of a minor child ("Gillard") by his mother as next friend. The First Amended Complaint alleges that in 1997 Gillard was an eleven year old special education student at Burbank Middle School, a part of the Boulder Valley School District RE–2. On December 19, 1997, Gillard was left unsupervised in a classroom with Justin King, a fourteen year old fellow student whom the plaintiff alleges was "a convicted juvenile sex offender with a history of violence and predatory sexual assault against children." First Amended Complaint, ¶ 13.

The plaintiff's claims arise from the following alleged events:

15. [Gillard and King] were left unsupervised in a darkened schoolroom by their teacher ... who, without first securing the permission of the children's parents, had arranged for them to view the recently released *pulp video*, Anaconda, a graphic sexual and violent film in which almost all of the characters face gruesome tortured deaths by the constrictive force of a giant phallic anaconda.

16. Inside the schoolroom, ... King sexually assaulted ... Gillard.

17. Upon her return to the room, [the teacher] noticed something was wrong and confronted ... King.

18. [The teacher] was aware of the assault but sent both children home for the winter break.

19. She did not ensure that the children were separated or supervised and took no steps to protect Gillard even with her knowledge that sexual assault had taken place.

20. At this time, before they departed school property and during school hours, ... King again sexually assaulted ... Gillard.

\* \* \* \* \* \*

25. Three weeks passed after the assault before [Gillard's mother was told] that she should consult with the police concerning an incident involving her son; no one else had informed [Gil-

lard's mother] of anything concerning [Gillard] relating to the incident.

First Amended Complaint, ¶¶ 15–20 and 25.

## II.

Shortly after a Scheduling Order was entered, the defendants filed their Motion for Protective Order. In support of their motion, the defendants argue that discovery will involve the disclosure of, among other things: (1) personnel records of current and former school district employees; (2) student records; and (3) juvenile arrest and delinquency records. All of this information normally is entitled to some degree of confidentiality. Motion for Protective Order, at ¶ 1.

The plaintiff opposes the entry of a protective order in the form proposed by the defendants, describing it as "sweeping and general." Plaintiff's Response at p. 1. The plaintiff also argues that: (1) the defendants have not met their burden to show good cause for the entry of a protective order, *id.;* (2) the form of protective order proposed by the defendants would allow the parties, rather than the Court, to determine in the first instance what is confidential, *id.* at p. 2; and (3) the requested protective order interferes with the plaintiff's "right to influence policy changes and encourage public debate about appropriate treatment of children in public schools." *Id.* at pp. 2–3. In support of this final objection, the plaintiff argues:

> Defendants should not be permitted to prohibit all discussions about their actions simply because it may annoy or embarrass them. Under the circumstances, embarrassment to the Defendants is appropriate. The actions of the Defendants while engaged in their duties as public employees are not private. The public's attention to the issues giving rise to the present case existed long before the filing of this lawsuit. The public, particularly the parents of the students of the Boulder Valley School district, has a right to be informed about the actions of public employees.

*Id.* at p. 3.

## III.

■ Rule 26(b)(1), Fed.R.Civ.P., allows broad discovery, not only of "any matter, not privileged, which is relevant to the subject matter involved in the pending action," but also of matters that appear "reasonably calculated to lead to the discovery of admissible evidence." As the Supreme Court noted in *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 30, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984):

> The [discovery] Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action.

In the face of the broad scope of permissible discovery, Fed.R.Civ.P. 26(c) provides a mechanism, available in appropriate cases, to limit the discovery or dissemination of certain information. Upon a showing of good cause and as justice may require "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," a court may, among other things, enter a protective order providing that discovery "not be had" or "be had only on specified terms and conditions...." Fed.R.Civ.P. 26(c)(1) and (2).

■ There are at least three kinds of protective orders which courts have utilized to limit the discovery or dissemination of confidential or private information—(1) particular protective orders; (2) blanket protective orders; and (3) umbrella protective orders. *See Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.,* 162 F.R.D. 456, 465 (S.D.N.Y. 1995).

■ **Particular Protective Orders:** The narrowest kind of protective order is one that covers specific, identified information. A particular protective order is usually sought by a party prior to disclosing the information for which protection is sought. It requires that a court review specific, identified information to determine whether good cause exists to enter an order providing protection for that specific information. In cases with more than a few sensitive documents, the use of particular protective orders can prove inefficient and burdensome because it requires a court to review and make

a determination about each piece of information for which protection is sought before that information is disclosed to the other side. *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 821 F.Supp. 232, 256 (D.Del.1992).

 **Umbrella Protective Orders:** At the other end of the spectrum, a court may issue an umbrella protective order which designates all discovery as protected without any prior review whatsoever, by either a court or the parties. Umbrella protective orders are disfavored. *Bayer AG,* 162 F.R.D. at 465.

 **Blanket Protective Orders:** Between the extremes are blanket protective orders. Blanket protective orders place upon the parties themselves, or others from whom discovery is sought, the initial burden of determining what information is entitled to protection. Normally, a blanket protective order requires that counsel for a producing party review the information to be disclosed and designate the information it believes, in good faith, is confidential or otherwise entitled to protection. The designated information is thereafter entitled to the protections afforded by the blanket protective order unless the designation is objected to by an opposing party. Judicial review of a party's designation as confidential occurs only when there is such an objection which the parties cannot resolve by agreement.

 Blanket protective orders routinely are approved by courts in civil cases, frequently on the stipulated request of the parties. The agreement of all parties is not required for the entry of a blanket protective order, however, so long as certain conditions are met. *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 121 F.R.D. 264, 268 (M.D.N.C.1988). Those conditions include the following:

> First, a party must make some threshold showing of good cause to believe that discovery will involve confidential or protected information. This may be done on a generalized as opposed to a document-by-document basis. Moreover, even though a blanket protective order permits all documents to be designated as confidential, a party must agree to only invoke the designation in good faith. After receiving documents, the opposing party has the right to contest those documents which it believes not to be confidential. At this stage, the party seeking the protection shoulders the burden of proof in justifying retaining the confidentiality designation. Thus, the burden of proving confidentiality never shifts from the party asserting that claim—only the burden of raising that issue.

*Id.*

 Blanket protective orders serve the interests of a just, speedy, and less expensive determination of complex disputes by alleviating the need for and delay occasioned by extensive and repeated judicial intervention. In view of increasingly complex cases and the existing workload of the trial courts, "[b]lanket protective orders are essential to the functioning of civil discovery. [A]bsent [such orders], discovery would come to a virtual standstill...." *Bayer AG,* 162 F.R.D. at 465–66 (quoting *Kamyr AB v. Kamyr, Inc.,* 1992 WL 317529 at *5–6 (N.D.N.Y. Oct. 30, 1992)).

### IV.

 In this case, the defendants have made a threshold showing of good cause to believe that discovery will involve the disclosure of confidential information, including personnel records, school records with personally identifiable information about students, and juvenile delinquency records, all of which normally are required to be maintained confidentially. The plaintiff concedes that certain information subject to discovery in this case should be maintained as confidential. Plaintiff's Response at p. 5. The defendants' generalized showing of good cause for the entry of a blanket protective order is sufficient, and a document-by-document showing is not required. *See Parkway Gallery Furniture,* 121 F.R.D. at 268.

In addition, the blanket protective order which I will enter requires that a lawyer designate information as confidential only after a review of the information and based on a good faith belief that it is confidential or otherwise entitled to protection. The protective order provides a procedure by which the

confidential designation may be challenged, and upon such a challenge the burden is on the party seeking protection to establish good cause.

## V.

▇ The plaintiff's final objection to the entry of a blanket protective order is that it improperly prevents her from using information obtained through discovery to embarrass the defendants, Plaintiff's Response at p. 3, and to "encourage public debate about appropriate treatment of children in public schools." *Id.* at p. 2. A similar argument was rejected by the Supreme Court in *Seattle Times Co. v. Rhinehart:* [1]

> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties
> . . . .
>
> \* \* \* \* \* \*
>
> To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required . . . . The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

467 U.S. at 34–36, 104 S.Ct. 2199 (footnotes omitted).

▇ Civil discovery is a device to allow parties to obtain information for the purpose of preparing and trying a lawsuit. Consequently, and contrary to the plaintiff's

argument, a party has no right to make unrestricted disclosure of the information obtained through discovery. *Id.* at 32, 104 S.Ct. 2199.

▇ A protective order, of course, prevents only the disclosure of information obtained solely as the result of court sanctioned discovery. A party is free to disseminate as it wishes information lawfully obtained through other means. *Id.* at 34, 104 S.Ct. 2199.

For the reasons stated, the Motion for Protective Order is GRANTED. A Protective Order, in the form of Appendix A, will be entered.

## APPENDIX A

### PROTECTIVE ORDER

Upon a showing of good cause in support of the entry of a protective order to protect the discovery and dissemination of confidential information or information which will improperly annoy, embarrass, or oppress any party, witness, or person providing discovery in this case, IT IS ORDERED:

1. This Protective Order shall apply to all documents, materials, and information, including without limitation, documents produced, answers to interrogatories, responses to requests for admission, deposition testimony, and other information disclosed pursuant to the disclosure or discovery duties created by the Federal Rules of Civil Procedure.

2. As used in this Protective Order, "document" is defined as provided in Fed. R.Civ.P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3. Information designated "CONFIDENTIAL" shall be information that is confidential and implicates common law and statutory privacy interests of (a) current or former School District employees, and (b) current or former School District students. *See, e.g.,* 22 U.S.C. § 1232g and 34 C.F.R. § 99.3 (concerning disclosure of personally identifiable information regarding students); section 24–

---

**1.** The *Seattle Times* case concerned the Washington state rules of procedure, which were substantially the same as the Federal Rules of Civil Procedure. Consequently, I find the Supreme Court's reasoning in *Seattle Times* equally persuasive in this case.

72–204(3)(a)(II)(A), C.R.S. (concerning disclosure of personnel records); and sections 19–1–304(1)(a) and (b.5), C.R.S. (concerning disclosure of juvenile delinquency records and arrest and criminal records information). CONFIDENTIAL information shall not be disclosed or used for any purpose except the preparation and trial of this case.

4. CONFIDENTIAL documents, materials, and/or information (collectively "CONFIDENTIAL information") shall not, without the consent of the party producing it or further Order of the Court, be disclosed *except that* such information may be disclosed to:

 (a) attorneys actively working on this case;

 (b) persons regularly employed or associated with the attorneys actively working on the case whose assistance is required by said attorneys in the preparation for trial, at trial, or at other proceedings in this case;

 (c) the parties, including the plaintiff's mother and designated representatives for the entity defendants;

 (d) expert witnesses and consultants retained in connection with this proceeding, to the extent such disclosure is necessary for preparation, trial or other proceedings in this case;

 (e) the Court and its employees ("Court Personnel");

 (f) stenographic reporters who are engaged in proceedings necessarily incident to the conduct of this action;

 (g) deponents, witnesses, or potential witnesses; and

 (h) other persons by written agreement of the parties.

5. Prior to disclosing any CONFIDENTIAL information to any person listed above (other than counsel, persons employed by counsel, Court Personnel and stenographic reporters), counsel shall provide such person with a copy of this Protective Order and obtain from such person a written acknowledgment stating that he or she has read this Protective Order and agrees to be bound by its provisions. All such acknowledgments shall be retained by counsel and shall be subject to *in camera* review by the Court if good cause for review is demonstrated by opposing counsel.

6. Documents are designated as CONFIDENTIAL by placing or affixing on them (in a manner that will not interfere with their legibility) the following or other appropriate notice: "CONFIDENTIAL."

7. Whenever a deposition involves the disclosure of CONFIDENTIAL information, the deposition or portions thereof shall be designated as CONFIDENTIAL and shall be subject to the provisions of this Protective Order. Such designation shall be made on the record during the deposition whenever possible, but a party may designate portions of depositions as CONFIDENTIAL after transcription, provided written notice of the designation is promptly given to all counsel of record within thirty (30) days after notice by the court reporter of the completion of the transcript.

8. A party may object to the designation of particular CONFIDENTIAL information by giving written notice to the party designating the disputed information. The written notice shall identify the information to which the objection is made. If the parties cannot resolve the objection within ten (10) business days after the time the notice is received, it shall be the obligation of the party designating the information as CONFIDENTIAL to file an appropriate motion requesting that the Court determine whether the disputed information should be subject to the terms of this Protective Order. If such a motion is timely filed, the disputed information shall be treated as CONFIDENTIAL under the terms of this Protective Order until the Court rules on the motion. If the designating party fails to file such a motion within the prescribed time, the disputed information shall lose its designation as CONFIDENTIAL and shall not thereafter be treated as CONFIDENTIAL in accordance with this Protective Order. In connection with a motion filed under this provision, the party designating the information as CONFIDENTIAL shall bear the burden of establishing that good cause exists

for the disputed information to be treated as CONFIDENTIAL.

9. At the conclusion of this case, unless other arrangements are agreed upon, each document and all copies thereof which have been designated as CONFIDENTIAL shall be returned to the party that designated it CONFIDENTIAL, or the parties may elect to destroy CONFIDENTIAL documents. Where the parties agree to destroy CONFIDENTIAL documents, the destroying party shall provide all parties with an affidavit confirming the destruction.

10. This Protective Order may be modified by the Court at any time for good cause shown following notice to all parties and an opportunity for them to be heard.