SMITHKLINE BEECHAM CORPORA-
TION, SmithKline Beecham, P.L.C., and
Beecham Group, P.L.C., Plaintiffs,

v.

SYNTHON PHARMACEUTICALS LTD.
and Synthon B.V., Defendants.

No. 1:00–CV–01179.

United States District Court,
M.D. North Carolina.

Sept. 5, 2002.

**164**

Allison O. Vanlaningham, Smith Moore, L.L.P., Greensboro, NC, James L. Gale, Smith Moore, L.L.P., Raleigh, NC, Ford F. Farabow, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, Robert D. Bajefsky, Richard B. Racine, Joann M. Neth, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for plaintiffs.

Robert J. Wishart, Pamela S. Duffy, Wishart, Norris, Henninger & Pittman, P.A., Burlington, NC, Mark E. Waddell, William J. Sipio, Chadbourne & Parke, New York City, for defendants.

### ORDER

ELIASON, United States Magistrate Judge.

Plaintiffs, a group of pharmaceutical companies, sue the defendants (hereinafter called

"Synthon") for patent infringement. They now have filed a motion to modify a stipulated, blanket protective order entered into between the parties. The reason for the request is their desire to use the deposition transcript of a Dr. Franz VanDahlen [1] (with Exhibits 2 & 4) to support their opposition to summary judgment filed in litigation pending in the United States District Court for the Eastern District of Pennsylvania which involves the same '944 patent at issue here. The Pennsylvania litigation is a consolidated action involving over sixteen parties. During the pendency of the instant motion, a protective order similar to the one entered in this case has been entered in the Pennsylvania action. Plaintiffs requested that Synthon consent to plaintiffs' use of the discovery material in the Pennsylvania litigation but were denied permission.

The question plaintiffs raise is whether this Court should amend a stipulated, blanket protective order to enable them to use protected confidential documents in another court in defense of a summary judgment motion involving one of the patents at issue in this case. This precise issue has not been decided by the Fourth Circuit Court of Appeals, but other courts have faced it.

■ While plaintiffs contend that courts have inherent power to modify protective orders, they also argue that the protective order itself contemplates modification. Plaintiffs point to paragraph 5 of the protective order which provides that should any party find it necessary to disclose information to persons other than outside counsel, in-house counsel, experts and consultants, employees or assistants of the litigation or the court, the parties shall attempt to reach an agreement and failing that, may file a motion to the court for resolution of the issue. Plaintiffs also reference paragraph 24

which provides: "This Order is without prejudice to the right of either party to seek relief from the court, upon good cause shown, from any of the restrictions provided above or to impose additional restrictions on the disclosure of any information or material produced." These clauses are ambiguous. In fact, the protective order neither allows nor prohibits use of confidential material outside of this litigation. Therefore, the Court will need to examine whether it possesses the inherent power to modify the protective order.

Plaintiffs argue that they have shown a need for a modification of the protective order, that they do not seek a massive release, but only a few confidential documents, and that Synthon will not be prejudiced because there is a protective order covering the information in the Pennsylvania litigation. Plaintiffs tout the fact that the Pennsylvania protective order would limit the use of the Dr. VanDahlen material for purposes of that litigation.[2] That protective order contemplates production of confidential information by non-parties and grants them standing to protect confidentiality under the protective order.

Synthon opposes plaintiffs' motion. It explains that in his deposition, Dr. VanDahlen discusses Synthon's confidential efforts to develop a wet granulation process and fear sharing that information with sixteen different law firms representing a number of competitors. Synthon contends that this confidential information was only divulged in reliance upon the confidentiality guaranteed by the protective order in this case. As a consequence, it asserts that plaintiffs have the burden of showing good cause for any modification and they cannot make this showing because plaintiffs should have fore-

---

1. Dr. VanDahlen is a vice president of research for Synthon. He lives in Holland. The deposition was taken in Greensboro, North Carolina, with the aid of a Dutch interpreter. Plaintiffs assert Dr. VanDahlen's testimony independently establishes the superiority of plaintiffs' paroxetine tablets' formulation, claimed in the '944 patent, over prior art. The '944 patent is also involved in the instant action.

2. There is some irony in plaintiff highlighting this clause as grounds for alleviating Synthon's privacy concerns. After all, the whole point of plaintiffs' modification motion is for them to use the material in other litigation. It is not unrealistic to suppose that if new litigation arises over the '944 patent, that plaintiffs (or others) will again have need to use the material in that litigation and request another modification of the protective order from this Court or the Pennsylvania court.

seen the desire to use discovery in this case in other cases and negotiated that into the protective order.[3]

Initially, the Court rejects Synthon's suggestion that a protective order may not be modified absent a clause permitting the same. Courts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir.1990), *cert. denied sub nom, American Special Risk Ins. Co. v. Rohm & Haas Co.*, 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *see Jochims v. Isuzu Motors, Ltd.*, 148 F.R.D. 624, 630 (S.D.Iowa)(collecting cases), *modified by*, 151 F.R.D. 338 (S.D.Iowa 1993). Therefore, the fact that the instant protective order does not contain a clause allowing use of confidential material in other litigation, while not irrelevant, does not bar the Court from modifying the protective order to allow such use.

A number of factors may be employed to help guide a court in exercising its discretion as to whether to modify a protective order. These factors include: the reason and purpose for a modification, whether a party has alternative means available to acquire the information, the type of protective order which is at issue, and the type of materials or documents which are sought.

The party seeking to modify a protective order bears the burden of showing good cause for the modification. *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir.2001); *Jochims*, 151 F.R.D. at 342. Some courts even require a showing of compelling need, improvidence in consenting to the order, or some extraordinary circumstance. *S.E.C.*, 273 F.3d at 229; *but contrast Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.)(reasonable need), *cert. denied sub nom, International Ins. Co. v. Bridgestone/Firestone, Inc.*, 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992); and *United Nuclear*, 905 F.2d at 1426 (adopting reasonable need test but noting wide variety

which have been employed). A number of courts have found sufficient need for modification to arise from efforts to avoid duplicative discovery when parties in other litigation seek to obtain the discovery in concluded litigation which involved a party to their present lawsuit. These courts have permitted timely intervention to obtain the discovery because of the considerable efficiency and savings of time and effort in avoiding duplicative discovery. *Beckman Industries*, 966 F.2d 470; *United Nuclear*, 905 F.2d 1424; *Jochims*, 148 F.R.D. 624, *as modified*, 151 F.R.D. 338; *but see Empire Blue Cross and Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217 (9th Cir.1995) (intervention untimely).

Even when a legitimate reason for the modification is proposed, such as a need to use the information in other litigation, the movant still should show the inability to reasonably obtain the information by alternative means. There are a number of prudential reasons for this requirement.

A court should be hesitant to modify protective orders for matters unrelated to the litigation in front of it because otherwise, in the long run, parties may begin to distrust protective orders. Discovery, in turn, will become more complicated and expensive and settlements will be more difficult. *S.E.C.*, 273 F.3d at 230. A natural feeling of unfairness arises when the rules are modified during the middle of the game, especially without very good cause. *Id.* Second, modifying protective orders for other litigation involves re-litigation over issues that have nothing to do with the lawsuit in front of the court. *Jochims*, 151 F.R.D. at 343. This burdens both the court and the parties. *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 334 (M.D.N.C.1999) (modification for ulterior purpose); *Jochims*, 151 F.R.D. at 343 (allowing modification but setting cut-off date for continued litigation). Such modifications involve the court in a controversy with which it is not familiar and over which it lacks control. *United Nuclear*, 905 F.2d at 1428

---

**3.** Synthon originally complained that it would not have standing to protect the confidential information once it is produced in the Pennsylvania litigation. That concern, however, has now

been obviated by the latter drafted terms of that protective order giving non-parties standing to intervene.

("district court must refrain from issuing discovery orders applicable only to collateral litigation."). The court in which the matter is pending will be in a better position to make rulings and the third party will have greater control when it is directly involved in that controversy. For these reasons, alternative means of obtaining the information should be sought prior to attempting to modify a protective order entered in another case.

■ In addition to the good cause and alternative means factors, the type of protective order sought to be modified has a direct bearing on the decision to modify. If the protective order has been entered upon an actual finding that the information falls within Rule 26(c) protection, great care should be exercised before modifying a protective order for use outside of the litigation and the court's control. A blanket protective order, on the other hand, often is nothing more than a Fed.R.Civ.P. 29 stipulation between the parties to keep discovery confidential. *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 121 F.R.D. 264, 268 (M.D.N.C.1988). A party's claimed reliance on such orders to protect confidentiality is, consequently, less than if the party had to make an actual or particular showing of confidentiality in order to obtain the protective order. *Id.; Beckman Industries,* 966 F.2d at 476. Therefore, when the modification involves a blanket protective order, the nature of the document which is sought assumes even greater importance.

■ The type of documents or information which will be revealed by the modification to the protective order directly bears on the decision to modify. To the extent that the documents are so-called "judicial documents," any presumption in favor of maintaining confidentiality must now contend with a presumption in favor of public access. *S.E.C.,* 273 F.3d at 231. While the parameters for defining a judicial document may not be entirely set, there appears to be agree-

ment that it does not arise from the mere filing of papers or documents, but only those used, submitted and relied upon by the court in making its decision.[4] *Id.* And, even as to judicial documents, the court must balance the confidentiality concerns of law enforcement, the private interests of innocent third parties, and the parties themselves. *Id.* at 232; *Jochims,* 151 F.R.D. at 341 (some trial documents retained confidential status).

■ When the document or information does not fall under the judicial document category, the court may look to the reasonableness of a party's reliance on maintaining confidentiality under a protective order. Arguably, the reasonableness of such reliance only increased after the 2000 amendments to Fed.R.Civ.P. 5(d). Rule 5(d) now prohibits the filing of depositions, interrogatories, requests for documents, and requests for admission until they are used in a court proceeding. This negates the previous concept that discovery material somehow carried with it a right to public access. *S.E.C.,* 273 F.3d at 233, n. 11. Even requests for non-protected documents will be more closely scrutinized. *New York v. Microsoft Corp.,* 206 F.R.D. 19, 24 (D.D.C.2002). In any event, nothing else appearing, a court may presume that any production of documents or information under a protective order has been in reasonable reliance on that order. Facts, of course, may dispel this presumption. *S.E.C.,* 273 F.3d at 233 (open deposition prior to protective order not taken in reasonable reliance).

■ For example, greater credence may be given to reliance on the confidentiality of settlement protective orders as opposed to more temporary pretrial ones. *S.E.C.,* 273 F.3d at 231. On the other hand, when the documents at issue do not likely involve highly confidential information, and/or the reason opposing disclosure is mainly the desire to make litigation more difficult, opposition to modification carries less weight. *United Nu-*

---

4. The mere fact that the court has entered a protective order does not thereby convert all documents produced at discovery into judicial documents. *S.E.C. v. TheStreet.Com,* 273 F.3d 222, 233 (2d Cir.2001).

*clear*, 905 F.2d at 1428; *see also Parkway Gallery*, 121 F.R.D. at 268 (sanctions for violation of protective order denied). And, the wholesale release of documents creates problems when doing so impinges on a wide variety of confidentiality, from trade secrets to less confidential business information. The burden of reviewing such a wholesale request constitutes grounds for denying the same. *Longman*, 186 F.R.D. at 335.

Even with a blanket protective order, some documents or information will, at initial apprehension, intuitively appear to be more confidential. The court may demand greater need for modification and act with more reluctance. And, as noted above, it may make a difference if the proposed modification involves one or many documents.

■ Turning to the instant case, the protective order in question is a blanket protective order, but one specifically entered into in order to prevent the disclosure of confidential scientific and commercial information in patent litigation. Defendant's reliance on the protective order is presumptively reasonable.

The information in question involves confidential scientific and commercial information—the exact type the protective order is intended to cover. Plaintiffs attempt to argue that Synthon has the duty to prove the confidentiality of the information to this Court and that because they have not filed affidavits, this Court should find that the information is not confidential. The Court rejects that argument. Paragraph 11 of the protective order provides that if any party disagrees with the confidentiality designation, it must notify that party of this decision and then seek appropriate relief from the Court. Plaintiffs have not indicated to the Court that they have followed this procedure and, therefore, the Court does not find any basis for conducting an evidentiary hearing into the confidentiality *vel non* of the Dr.

VanDahlen deposition. The Court, therefore, may and will assume that the deposition contains trade secret and/or confidential commercial information.[5]

■ Next, plaintiffs have not shown that this document has traveled outside of the pretrial discovery process and become a judicial document in this litigation. Thus, the confidential nature of the document is entitled to continued deference. In addition, the fact that plaintiffs now apparently wish to use this confidential information as a potential judicial document in other litigation counsels greater caution before granting plaintiffs' modification.[6]

■ In summation, plaintiffs have shown a legitimate need for modification of the protective order. Synthon, on the other hand, has shown grounds for giving deference for continued protection. Plaintiffs are correct when they point out that Synthon's opposition does not disclose any irreparable harm should the modification be granted. Moreover, the request for modification only involves a limited set of documents. And, plaintiffs are willing to redact sensitive, nonrelevant parts of the documents. Plaintiffs suggest that Synthon's real reason for opposition is merely to force the Pennsylvania court to make a decision on the '944 patent without considering some very relevant information. In short, plaintiffs present a tempting case for granting modification. Nevertheless, the party seeking modification bears the initial and overall burden of persuasion. Plaintiffs fail to meet their burden because they have not shown an inability to obtain the information by alternative means. This throws the balance in this case.

Plaintiffs have stated that they have tried to obtain the information in ways other than requesting a modification of the protective order from this Court. However, that attempt did not involve serving a third-party

---

5. In addition, a review of the deposition and the parties' explanation of it, all suggest it contains confidential information. Plaintiffs have not shown any acts waiving the confidentiality.

6. Plaintiffs do point out that Synthon will have specific rights in the Pennsylvania litigation in order to protect its confidentiality interests.

subpoena in the Pennsylvania action on Synthon to obtain the deposition. Rather, plaintiffs served a Fed.R.Civ.P. 45 subpoena on Synthon's attorney. That, however, is not a substitute for a third-party subpoena to be served directly on the real party in interest. A third-party subpoena would have given Synthon a right to directly participate in the drafting of the protective order. Plaintiffs do not explain why they did not pursue this process. There may be good reasons, but if so, they were not presented.[7]

The Court agrees with plaintiffs and those courts which assert that avoiding duplicative discovery advances concerns above and beyond that of the parties and is a proper ground for modifying a protective order. Moreover, plaintiffs have shown that Synthon would have rights to protect itself in the Pennsylvania action. Nevertheless, prudential concerns convince the Court that a motion to modify a protective order in order to use material in other litigation should, in most cases, be the last resort of a party, not the first. For all these reasons,

IT IS ORDERED that plaintiffs' Motion to Amend Joint Stipulated Protective Order Pursuant to Rule 26(c) (docket no. 68) be, and the same hereby is, denied.

---

7. The third-party subpoena route has the added benefit of allowing the court in which the main litigation is pending to make the ruling. This may be particularly appropriate when relevancy of the discovery is a significant issue. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318 (Fed.Cir.1990) (complex issues and lack of interest among all parties to adequately inform ancillary court made resolution by ancillary court extremely difficult). When the information is sought via a subpoena, the third party has the right to request transfer of the dispute to the court in which the main litigation is pending for resolution. *United States v. Star Scientific, Inc.*, 205 F.Supp.2d 482 (D.Md.2002), *citing Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 70 n. 2 (M.D.N.C. 1986). Moreover, although not all courts agree, some have held that the court itself may *sua sponte* transfer such a conflict. *Id.* (collecting cases). The court in which the litigation is pending will be in a better position to decide relevancy issues.